IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FRANKIE GRAEWE, SR.,** | ) | **CASE NO 5:10-CV-0506** |
| | ) | |
| Petitioner, | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| v. | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **JESSE WILLIAMS, Warden,** | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Frankie Graewe, Sr. ("Graewe"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Graewe*, Tuscarawas County Court of Common Pleas Case No. 2007CR01-0060. Graewe filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on March 9, 2010. On August 30, 2010, Warden Williams ("Respondent") filed his Answer/Return of Writ. (Doc. No. 8.) Graewe filed a Traverse on September 27, 2010.[1] (Doc. No. 10.) For reasons set forth in detail below, it is recommended that Graewe's petition be denied.

### I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Graewe's conviction as follows:

{¶ 2} On September 21, 2006, a residence at 449 Center Street, Newcomerstown,

---

[1] Simultaneously, Graewe filed a motion to order expansion of the record to include any DVD audio or video recordings of his trial proceedings (Doc. No. 11), which the Court denied on December 10, 2010, as being "redundant and otherwise unnecessary for the administration of justice." (Doc. No. 13.)

Ohio, was destroyed by a fire. Earlier that day, appellant had been evicted from that residence and served with a civil protection order obtained by Bonnie Snively, appellant's live-in girlfriend. The home, which was of modular design, was owned by Bonnie Snively's sister, Deborah Postel, and Deborah's husband.

* * *

Review of State's Witnesses

{¶ 13} The State first presented evidence, via the chief deputy of the Tuscarawas County Clerk of Courts, Jeanne Stephan, that a domestic violence CPO petition, bearing the name of Bonnie Snively as movant, had been filed on September 20, 2006, just one day before the fire in question. The petition listed appellant and Bonnie Snively as residing at 449 Center Street. A sheriff's return indicated that appellant had been served with the petition and order, as well as an order to vacate the premises at 449 Center Street.

{¶ 14} The State next called Jennifer Hursey, a social worker at Harbor House, a domestic violence shelter. Hursey testified that Bonnie Snively reported to the shelter on September 11, 2006, about ten days before the fire. Snively was reported to have been bruised all over her body at that time. She remained at the shelter until June 2007.

{¶ 15} Deborah Postel, who jointly owned the home at 449 Center Street with her husband, next took the stand, recalling numerous disputes occurring between appellant and Bonnie (her sister). Some of these disputes resulted in someone physically damaging the modular home, including punching holes in the interior. On several occasions, appellant had stated that if he couldn't live in the house, nobody was going to live there. Tr. at 156.[FN1] Postel also had requested several times that appellant refrain from walking away from grease cooking on the stove, as he habitually would do when he prepared food. Postel also testified that she was aware of no electrical or mechanical problems in the house that would have led to a fire. She also noted that the only other persons to have house keys, other than she and her husband, were Bonnie and appellant.

> FN1. Another witness, Carrie Gaines, subsequently testified to hearing appellant make the same remark. Tr. at 184.

{¶ 16} The jury then heard Deputy Dale Gowins, a court process server, relate his visit to 449 Center Street the morning of the day of the fire.[FN2] At about 11 AM that day, Gowins took to the residence the CPO papers pertaining to Bonnie and the eviction notice obtained by Deborah Postel. Gowins found appellant outside, and asked to discuss the situation with him inside. When presented with the paperwork, appellant became extremely angry, although he did not threaten or assault the deputy. As they went over the papers, Gowins realized that a female acquaintance of appellant's, Casey Myers, was present in the house. Appellant declined the deputy's offer to give him a ride to another residence; the deputy thereupon left at about 11:42 AM.

> FN2. According to the dispatcher, Carol Schreffler, the 911 call for the fire came in at 12:55 PM on the afternoon of September 21, 2006. Tr. at 198. Gerald Minor, a part-owner of a neighboring business, later testified that he was the person who made the original 911 call. Tr. at 317.

2

{¶ 17} According to Casey Myers, after Gowins left the premises, appellant went into a rage and started tearing up the interior of the house. She testified that appellant moved some of his effects to a semitrailer at the edge of the property, then, with Casey waiting outside, went back into the house, ostensibly to "get his boots." Tr. at 244-245. He later came back out, carrying no boots or other items. Casey recalled that she and appellant then proceeded to the home of Anita Weber, which was less than a block away. According to Casey, appellant made the following admission to her at a bar later that night: "He told me he [had] sat a pan of grease on top of the stove, turned it on high and put paper towels around it and set bug bombs off and he said if I said anything to anybody or told on him, that I would get what Bonnie gets." Tr. at 252.

{¶ 18} The State then called Kimberly Wilburn and Allen Smart, both neighbors of the former residence at 449 Center Street. Both of these witnesses testified they saw appellant at the rear of Smart's house, which is just behind 449 Center Street, at 12:30 PM on September 21, 2006. Smart added that he saw no one entering or exiting the 449 Center residence during that time frame.

{¶ 19} The next witness was Robert McGarry, the assistant fire chief. He stated he entered the house as the fire was being battled, noticing that the inside had been ransacked, with furniture apparently piled up near the front entrance. He noticed that appellant did not come near the fire scene, even though the firefighters were on scene for over four hours. A State Fire Marshall forensic lab chemist, Krista Rajendram, Ph.D., was next called to go over the tests made on the linoleum floor samples taken from the burned house. Her tests did not reveal any "ignitable liquids," although she stated that such substances are sometimes washed away by water from the firefighters, or simply consumed in the flames. Tr. at 337-340. She also found no evidence of cooking oil in a second test procedure, which we will further discuss in appellant's Fourth Assignment of Error, *infra*.

{¶ 20} The final witness for the State was investigator John Weber of the State Fire Marshall's Office. Discussing, inter alia, the discovery of melted metal pots near the stove, the damage near the stove area, and the "V" shaped burn patterns in the kitchen, he opined that the fire was human set and ruled out an accident. Tr. at 408-457.

Review of Defense Witnesses

{¶ 21} Defense counsel in turn called two witnesses, one of which was appellant. The first, Anita Weber, presented an alibi that appellant was at her house right around 12 noon on September 21, 2006. Weber conceded on cross-examination that she has a felony record for cocaine trafficking and passing bad checks. Appellant, in his own defense, denied setting the fire, and claimed that the responding fire fighters must have been responsible for the disarrayed furniture. He testified that he had no knowledge as to why Bonnie had numerous bruises when she appeared at the shelter several days before the fire. He admitted to having consumed alcohol the morning of the fire, when Deputy Gowins served the court papers. It was also revealed that appellant had been previously convicted of three counts of felonious assault on a police officer.

*State v. Graewe*, 2008 WL 4444740, **1-3 (Ohio App. 5th Dist., Sept. 30, 2008).

## II. Procedural History

### A. Conviction

On January 24, 2007, a Tuscarawas County Grand Jury charged Graewe with aggravated arson, a second degree felony, in violation of Ohio Revised Code ("O.R.C.") § 2909.02(A)(2). (Doc. No. 8-7, Exh. 1.)  After pleading not guilty, Graewe filed motions to exclude evidence of prior convictions and bad acts.  The trial court ruled on these motions, allowing the admission of Graewe's acts of domestic violence against Bonnie Snively, the resulting civil protection order, and three prior felonious assault convictions.  (Doc. No. 8-9, Exh. 3.)  On September 28, 2007, a jury found Graewe guilty as charged.  (Doc. No. 8-11, Exh. 5.)  On October 4, 2007, Graewe was sentenced to a prison term of seven years.  (Doc. No. 8-12, Exh. 6.)

### B. Direct Appeal

On October 22, 2007, Graewe, through counsel, filed a Notice of Appeal with the Court of Appeals for the Fifth Appellate District ("state appellate court") raising four assignments of error:

1. The trial court's finding of guilt was based upon insufficient evidence and was against the manifest weight of the evidence.

2. The trial court erred in admiting [sic] evidence that was unfairly prejudicial to the appellant.

3. The appellant was deprived of due process of law by prosecutorial misconduct.

4. The trial court committed reversible error and violated the appellant's right to due process by failing to grant a mistrial for violations of *Brady v. Maryland* [373 U.S. 83, 83 S.Ct. 1194 (1963)] and prosecutorial misconduct.

(Doc. Nos. 8-13, Exh. 7; 8-14, Exh. 8.)  On September 30, 2008, Graewe's conviction was affirmed.

On October 23, 2008, Graewe filed a Notice of Appeal with the Supreme Court of Ohio raising three propositions of law:

1. The Trial Court erred in admitting evidence that was unfairly prejudicial to the Defendant-Appellant.

2. The Appellant was deprived of Due Process of law by prosecutorial misconduct.

>    3.     The Trial Court committed reversible error and violated the Defendant-Appellant's right to Due Process by failing to grant a mistrial for violation of *Brady v. Maryland* and prosecutorial misconduct.

(Doc. Nos. 8-17, Exh. 11; 8-18, Exh. 12.)  On February 4, 2009, the appeal was dismissed as not involving any substantial constitutional question.  (Doc. No 8-20, Exh. 14.)

### C.     Post-conviction Relief

On October 14, 2009, Graewe, *pro se*, filed a "motion to nullify conviction and sentence" alleging a conspiracy among the attorneys, the trial judge, and the witnesses.  (Doc. Nos. 8-21, Exh. 15; 8-22, Exh. 16.)  Noting that Graewe's conviction and sentence were affirmed by the appellate court, the trial court denied Graewe's motion.  (Doc. No. 8-23, Exh. 17.)  Graewe subsequently filed a motion for reconsideration, which the court also denied.  (Doc. Nos. 8-24, Exh. 18; 8-25, Exh. 19.)

### D.     Federal Habeas Petition

On March 9, 2010, Graewe filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: Petitioner's right to due process of law and a fair trial were violated by the erroneous admission of other acts evidence.
>
> **Supporting facts**: The trial court repeatedly permitted testimony that Petitioner had engaged in domestic violence and that he had a restraining order against him at the time of the fire, leading the jury to convict based upon emotion despite the lack of evidence that an arson even occurred, depriving Petitioner of due process and a fair trial.
>
> **GROUND TWO**: Petitioner was deprived of due process of law by the misconduct of the prosecutor throughout the proceedings.
>
> **Supporting facts**: Throughout the entire trial, the prosecutor engaged in leading the witness so often that he was reprimanded by the trial court.  Moreover, he continually interrupted and cut off defense counsel throughout the trial and continued with such antics despite repeated reprimands by the trial court with complete disregard for courtroom decorum or the propriety of his misconduct. Moreover, the prosecutor hid the existence of a lab test and resulting report establishing that no cooking oil was detected from specific testing his office requested on flooring samples from the scene, which adversely affected his case, and only through inadvertent slippage by a state witness during cross-examination did this evidence come to light, too late to be properly explained to the jury.
>
> **GROUND THREE**: Petitioner's right to a fair trial and due process of law was violated by the trial court refusing a mistrial based upon repeated prosecutorial misconduct and the *Brady* violation.

5

>**Supporting facts**: Despite repeatedly reprimanding the prosecutor for leading witnesses, interrupting defense counsel and essentially making a mockery out of the trial, the trial court refused to grant a mistrial, even though the jury was hopelessly tainted by the prosecutor's antics. Moreover, when the withholding of exculpatory evidence was inadvertently exposed during trial, the trial court refused to grant a mistrial, despite the irreparable prejudice resulting therefrom.

(Doc. No. 1.)

### III. Exhaustion and Procedural Default

#### A.     Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

#### B.     Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

6

grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause"and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One**

Graewe contends that his rights to due process and a fair trial were violated when the trial court admitted other acts evidence, including evidence of domestic violence against Bonnie Snively and a resulting restraining order that was served on Graewe the day of the fire. Graewe argues these rulings led the jury to convict based upon emotion. (Doc. No. 1 at 5.) Respondent contends that this ground is procedurally defaulted as it was not presented to the state court as a federal constitutional issue. Graewe counters that this claim was raised in the state court based on Ohio's evidence rules 403 and 404(B), which are the same as the corresponding federal evidentiary rules. (Doc. No. 10 at 4.) Further, he argues that in his appellate brief he did rely on federal constitutional law.[3] *Id*.

This Court declines to address the procedural default issue, and will instead proceed to address the merits of Graewe's claim. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

Alleged trial errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are typically not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "[Q]uestions concerning the admission of evidence that may be unfairly prejudicial are committed to the sound discretion of the trial court." *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979); *see also Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir. 1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law

---

[3] On direct appeal, Graewe referred to *Huddleston v. U.S.*, 485 U.S. 681 (1988). (Doc. No. 8-14 at 25-26.)

10

questions.'") (citations omitted). Such claims are only cognizable where the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

Graewe argues that he was denied a fair trial for two reasons. First, he contends that a friend, Casey Myers, who testified against him at trial, had been threatened and intimidated by the State. (Doc. No. 10 at 5-6.) He further alleges that Myers was paid $5,000 for her testimony.[4] *Id*. He next contends that without the evidence of domestic violence and the restraining order issued against him, he would not have been convicted. (Doc. No. 10 at 6.)

Respondent maintains that Graewe is not entitled to relief under AEDPA on this ground as there is no clearly established Supreme Court law on the issue. (Doc. No. 8 at 14.)

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1983). Furthermore,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id*. at 75 n. 5, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385. Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id*. at 563-64, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority."

---

[4]Upon review of the record, the Court finds no evidence in support of Graewe's contention that the witness, Casey Myers, was threatened or harassed, or that she was paid $5,000 for testifying against Graewe. In the motion to nullify, he relies on his own self-serving affidavits to support the allegation that Myers was threatened and harassed by the State. (Doc No. 8-22 at 10, 26-27.) Interestingly, Graewe does not include a statement about Myers receiving a payment from the State in his affidavit.

11

> *Id.* at 564, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly ... there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell*, 329 F.3d 469, 512-13 (6th Cir. 2003). Moreover, the Supreme Court and the Sixth Circuit have held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Norris v. Davis*, 2006 WL 1581410 (E.D. Mich. May 3, 2006); *Pennington v. Lazarof*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (*per curiam*) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

When evidentiary ruling errors are alleged, the federal court's inquiry in reviewing such claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980).

The state appellate court rejected Graewe's assertion that he was denied a fair trial due to admission of evidence regarding prior bad acts, as follows:

> {¶ 34} In his Second Assignment of Error, appellant contends the trial court erred in permitting "other acts" evidence regarding him to be presented to the jury. We disagree.
>
> {¶ 35} The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App. No.1999CA00027.
>
> {¶ 36} Evid.R. 403(A) states as follows: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." In addition, Evid.R. 404(A) provides, with certain exceptions, that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

12

> {¶ 37} Appellant maintains the trial court should have excluded (1) evidence suggesting appellant's past domestic violence, (2) evidence that Bonnie had bruises on her when she went to the shelter, and (3) evidence that appellant was served with a CPO the day of the fire. In light of the entire record in the case sub judice, we hold it was within the trial court's discretion to allow into evidence this domestic violence-related information for the purpose of proving the possible motive and plan of appellant in seeking retribution against Bonnie and her sister, Deborah, the house's owner. *Cf. State v. Banks* (1986), 31 Ohio App.3d 57, 61, 508 N.E.2d 986. Moreover, a modicum of background information was necessary to explain the presence of Deputy Gowins at the house on the morning of the fire. Furthermore, juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. DeMastry*, 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, *citing State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.

*State v. Graewe,* 2008 WL 4444740, *5 (Ohio App. 5th Dist. Sept. 30, 2008).

For the reasons addressed by the state appellate court, the evidence Graewe is objecting to was rationally connected to the crime charged. It was reasonable for the trial court to admit evidence showing that Graewe's conduct may have been triggered by the fact that several hours earlier Graewe had been served with a civil protection order and an eviction notice. It, therefore, was reasonable for the appellate court to conclude that the evidence was relevant, had probative value and was not unduly prejudicial. Furthermore, the court instructed the jury that the other acts evidence was only to be considered for a limited purpose:

> The testimony of a defendant is to be weighed by the same rules that apply to other witnesses. Evidence was received about the commission of wrongs or acts other than the offense with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with that character. If you find that the evidence of other wrongs or acts is true and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proved the absence of mistake or accident on the defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense changed in this trial or the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose.

> Evidence was received that the defendant was convicted of three counts of felonious assault. That evidence was received for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show he acted in conformity with that character. If you find that the defendant was convicted of three counts of felonious assault, you may consider that evidence only for the purpose of testing the defendant's credibility or believability and the weight to be given the defendant's testimony. It cannot be considered for any other purpose.

(Doc. No. 8-31 at 305-306.) For these reasons, the Court finds that the admission of the other acts evidence was not fundamentally unfair and that the state appellate decision was not objectively unreasonable.

13

### B.  Grounds Two and Three

Graewe argues prosecutorial misconduct in both grounds two and three.  (Doc. No. 1 at 7-8.)  He claims that during the trial the prosecutor continually asked leading questions of the State's witnesses and interrupted defense counsel.  *Id*.  Graewe also contends that the prosecutor "hid the existence" of a second lab test from him.  *Id*.  In ground three, Graewe further expands this argument by raising a *Brady* claim as to exculpatory evidence not produced by the State prior to trial.  (Doc. No. 10 at 2-12.)  Specifically, Graewe contends that the second laboratory report, which found no evidence of cooking oil on the floor sample near the origin of the fire, could have been used for Myers' cross-examination to impeach her testimony that Graewe admitted setting the fire by using cooking oil.  (Doc. No. 10 at 11.)

Respondent contends that the prosecutor's actions were neither prejudicial nor deliberate, the trial court provided proper limiting and curative instructions, and the evidence adduced at trial was strong.  (Doc. No. 8 at 16.)  As to the *Brady* violation, Respondent contends that the second lab report was merely cumulative and, in any event, did not meet the materiality standard under *Brady*.  (Doc. No. 8 at 29.)  Furthermore, Respondent claims that because the report was ultimately provided to defense counsel during trial and he used it in his defense, a *Brady* violation did not occur.  *Id*.  Lastly, Respondent contends that given these circumstances, the decision of the state appellate court involved a reasonable application of federal constitutional law to the facts.  *Id*.

### 1.  Prosecutorial Misconduct

To establish a constitutional violation, a prosecutor's misconduct must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Fletcher v. Beightler*, 2010 WL 5872121 *22 (N.D. Ohio Oct. 12, 2010).  A reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor."

14

*Smith v. Phillips*, 455 U.S. 209, 219 (1982).  A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial.  *United States v. Young*, 470 U.S. 1, 11-12 (1985).  "Reversal is required only if the prosecutor's misconduct is 'so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (*quoting Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.) *cert denied*, 522 U.S. 1001 (1997)).

The Sixth Circuit has stated that a court should perform a two-step test to determine whether a prosecutor's inappropriate statements warrant a reversal.  *See United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir. 2004); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994).  First, a court must determine whether a prosecutor's statements were improper, followed by a second determination as to whether the impropriety constitutes reversible error.  *DeJohn*, 368 F.3d at 548.  The following four factors are used to determine if reversal is necessary: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id*., *quoting Carroll*, 26 F.3d at 1385.

Further, prosecutorial misconduct claims are subject to harmless error analysis.  *See Bates v. Bell*, 402 F.3d 635, 642 (6th Cir. 2006) ("An error is found to be harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'") (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

The state appellate court concluded that although some of the prosecutor's actions were improper, Graewe was not denied a fair trial:

> {¶ 40} A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141, 661 N.E.2d 1019, 1996-Ohio-227. Furthermore, isolated comments by a prosecutor are not to be taken out of context and given their "most damaging meaning." *See Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. *State v. Loza*, (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082.
>
> {¶ 41} Appellant recites numerous alleged instances of improper conduct by the prosecutor on this case. Appellant first maintains the prosecutor, during opening

15

arguments, exaggerated the import of appellant's removal of his box of family photos and two clothes baskets by telling the jury "a lot, if not most, of his stuff had been moved out to an adjacent trailer." *See* Tr. at 120. Appellant also directs us to portions of transcript wherein the prosecutor allegedly led witnesses and "attempted to testify for [them]." *See* direct examination of Casey Myers, Tr. at 252-254; direct examination of Kimberly Wilburn, Tr. at 293. Appellant further points to attempts by the prosecutor to elicit information about the fire which he urges should have come from Bonnie Snively, who was never called as a witness. Appellant also notes that the prosecutor, during his cross-examination of appellant, tended to characterize each witness who had disagreed with appellant's version of events as a liar. *See* Tr. at 558.

{¶ 42} Clearly, this trial was one punctuated by frequent objections and sidebars, and the prosecution was admonished at several points to refrain from leading witnesses or making statements in the nature of self-testimony. Upon review, while we indeed find some of the cited instances of prosecutorial conduct noted in appellant's brief to be improper, we do not conclude the statements in *toto* prejudicially affected appellant's substantial rights. *Loza, supra.*

*State v. Graewe*, 2008 WL 4444740, *6 (Ohio App. 5th Dist. Sept. 30, 2008).

Graewe has failed to show that the state appellate court's resolution of this issue was contrary to or an unreasonable application of Supreme Court precedent. Upon reviewing the trial transcript, the trial court sustained defense counsel's objection to the prosecutor's leading questions or repeating answers of witnesses eleven times throughout the four day trial. As the state appellate court noted, these instances of prosecutorial misconduct were improper, but were not "so gross as probably to prejudice the [petitioner.]" *Lundgren*, 440 F.3d at 778. Furthermore, a defendant cannot establish that a prosecutor's use of improper leading questions violated his right to a fair trial where defense objections to the leading questions were sustained. *U.S. v. Sarkisian*, 197 F.3d 966, 988 (9th Cir. 1999); *Smith v. Sherry*, 2010 WL 1686899, *8 (E.D. Mich. Apr. 26, 2010).

Additionally, the trial court sustained defense counsel's objections and the jury was instructed what to consider as evidence:

Evidence is all the testimony received from the witnesses, the exhibits admitted during the trial, facts agreed to by counsel and any facts which the Court requires you to accept as true.

\* \* \*

The evidence does not include the indictment, opening statements or closing arguments of counsel. The opening statements and closing arguments are designed to assist you, they are not evidence. Statements or answers that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you never heard them. You must not speculate as to why the Court

16

>sustained the objection to any question or what the answer to such question might have been.

(Doc. No. 8-31 at 303.)

The strength of the evidence in this case also reduces the likelihood that the jury's decision was influenced by the prosecutor's conduct. *See Darden*, 477 U.S. at 182. Graewe admitted to Casey Myers that he set the fire and threatened to harm her if she told anyone. (Doc. No. 8-30 at 255-256.) Casey testified that after Graewe removed his belongings from the home, he reentered allegedly to retrieve his boots, but after quite some time emerged without them. (Doc. No. 8-30 at 244-245.) There was also testimony that on the day of the fire, Graewe was served with a restraining order by a court process server. (Doc. No. 8-30 at 136-141; 225-226; 246.) Neighbors testified that they observed him at the scene immediately before the fire started. (Doc. No. 8-30 at 302, 306.) Lastly, there was testimony that Graewe had bragged to several witnesses that if he could not live in the house, no one was going to live there. (Doc. No. 8-30 at 169, 188, 247.) On direct appeal, the state appellate court held that there was sufficient evidence to convict Graewe of aggravated arson.

While the prosecutor's conduct during trial was not perfect, "given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and ... the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). Considering the prosecutor's conduct in the context of the trial as a whole, the trial court's prompt response to the prosecutor's objectionable conduct, as well as Graewe's admission to Myers, the Court concludes that the cumulative effect of the prosecutor's errors did not deprive Graewe of a fair trial.

Graewe further contends that the state appellate court's "piecemeal artificial isolation examination" of each instance of prosecutorial misconduct was contrary to Supreme Court precedent. (Doc. No. 10 at 9.) However, the Sixth Circuit has held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief. *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291

F.3d 416, 447 (6th Cir. 2002) (death penalty decision stating, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").

The Court finds that the state appellate court's conclusion that Graewe was not deprived of a fair trial by any of the individual instances of alleged misconduct or the cumulative effect of the prosecutor's errors was not contrary to or an unreasonable application of Supreme Court precedent.

### 2. Brady Violation

The Sixth Circuit has summarized the law governing *Brady* claims as follows:

Under *Brady v. Maryland*, the government has a constitutional obligation to furnish a criminal defendant with any exculpatory evidence related to the defendant's guilt or possible punishment. 373 U.S. at 87. "[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. Thus, in order to comply with *Brady*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286(1999) (*quoting Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)) (internal quotation marks omitted).

The prosecutor's duty to disclose under *Brady* encompasses impeachment evidence as well as exculpatory evidence. *Id*. at 280 (*citing United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)); *Hawkins v. Coyle*, 547 F.3d 540, 556 (6th Cir.2008). "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

"A successful *Brady* claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir.2008) . . . .

Evidence is deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682; *accord Johnson v. Bell*, 525 F.3d 466, 475 (6th Cir. 2008) (*citing Strickler*, 527 U.S. at 289-90.) As the Supreme Court has further explained:

> *Bagley's* touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

18

> *Kyles*, 514 U.S. at 434. Therefore, "favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Cone v. Bell*, --- U.S. ----, ----, 129 S.Ct. 1769, 1783, 173 L.Ed.2d 701 (2009) (*quoting Kyles*, 514 U.S. at 435).

*Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010); *LaMar v. Ishee*, 2010 WL 5574467, **9-10 (S.D. Ohio Jul. 30, 2010).

Moreover, it has long been recognized that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one," *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), and that as such, "the Constitution does not require the prosecutor to share all useful information with the defendant." *United States v. Ruiz*, 536 U.S. 622, 629 (2002), *citing Weatherford*, 429 U.S. at 559. Also, the state must actually suppress evidence in its possession for a *Brady* violation to occur. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). The Sixth Circuit has observed, that "'*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose,'" noting also, however, that delay violates *Brady* only "'when the delay itself causes prejudice.'" *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007), *quoting United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994), and *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir. 1992), judgment vacated and remanded on other grounds by *Mohwish v. United States*, 507 U.S. 956, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993).

The state appellate court rejected Graewe's claim of a *Brady* violation:

> {¶ 47} In *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court held that the "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a violation, a defendant must prove that the prosecution failed to disclose evidence upon request, the evidence was favorable to the defense, and the evidence was material. *State v. Garn* (Feb. 21, 2003), Richland App. No. 02CA45, *citing Moore v. Illinois* (1972), 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706. "[T]he test of *Brady* materiality is whether there exists a reasonable probability that the result would have been different had the evidence been disclosed to the defense." *State v. Franklin*, Montgomery App. No. 19140, 2002-Ohio-6193, *citing State v. LaMar* (2002), 95 Ohio St.3d 181, 187, 767 N.E.2d 166, 2002-Ohio-2128.

> {¶ 48} During defense cross-examination of the State's chemist in the case *sub judice*, it was disclosed that after an original State Fire Marshal report concluded that the flooring samples from the house did not contain a flammable liquid, a second report had been generated on or about January 2, 2007. This second report, which was not

supplied to defense counsel prior to trial, concluded that upon further testing, the floor samples specifically did not contain evidence of cooking oil.

{¶ 49} The record reveals that upon appellant's motion for a mistrial, the trial court sent the jury out and conducted an extensive *voir dire* of the fire marshal investigator and the chemist who prepared the report. Given that other testimony established that no liquid accelerants (which would have included cooking oil) were found on the floor samples, we are unpersuaded the trial court's denial of a mistrial constituted an abuse of discretion under these circumstances.

*State v. Graewe*, 2008 WL 4444740, *7 (Ohio App. 5th Dist. Sept. 30, 2008).

The state appellate court reasonably applied federal constitutional law to the facts in concluding that no *Brady* violation occurred as the second, more specific, laboratory test results were also covered in the first report that was disclosed prior to trial. Defense counsel used the first report in his cross-examination of the fire investigator and presented the jury with the report's finding indicating no evidence of liquid accelerants. (Doc. No. 8-31 at 63.) The second lab report stating that no cooking oil was found on the flooring samples, *id.* at 64, was cumulative and not dispositive as it did not meet the materiality standard under *Brady*. Moreover, because the report was ultimately provided to defense counsel and used by him at trial, a *Brady* violation did not occur. Graewe, therefore, has not demonstrated that he was prejudiced by the delay in disclosure. The Court finds that the state appellate court decision involved a reasonable application of *Brady* and a reasonable assessment of the facts.

### V. Conclusion

For the foregoing reasons, it is recommended that Graewe's Petition be denied.

s/ Greg White
United States Magistrate Judge

Date: May 4, 2011

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**